200 F.Supp.2d 1045 (2001)
ST. PAUL FIRE AND MARINE INS., Plaintiff,
v.
Dr. Charles LIPPINCOTT and Dr. Barbara J. Lippincott, Defendants.
No. 4:00-CV-0281LOD.
United States District Court, E.D. Missouri, Eastern Division.
July 31, 2001.
*1046 Russell F. Watters, Managing Principle, Brown & James, P.C., St. Louis, MO, for Plaintiff.
Kathi L. Chestnut, Jill K. Luft, Greensfelder & Hemker, St. Louis, MO, for Defendants.

ORDER AND MEMORANDUM
DAVIS, United States Magistrate Judge.
This matter is before the Court upon the motions of the parties for summary judgment. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
Plaintiff seeks in its complaint for declaratory judgment a declaration of plaintiff's rights and obligations for a claim made by defendants under a policy of insurance. Plaintiff also seeks recovery of fees and expenses. The parties do not dispute that jurisdiction is proper in this Court, as diversity of citizenship exists and the amount in controversy is in excess of $75,000 as required under 28 U.S.C. § 1332.

FACTS
The facts are mostly undisputed. On or about January 7, 1999, Steve and Bonnie Thompson filed a petition in the Circuit Court of Greene County, Missouri, alleging fraud and recision. The Thompsons claimed that defendants Lippincott made false representations to the Thompsons in connection with defendants selling their *1047 home to the Thompsons. The Thompsons alleged that the Lippincotts intentionally and negligently concealed structural damage to the home.
The plaintiff in the case before this Court, St. Paul Fire and Marine Insurance, had previously issued a policy of insurance to the Lippincotts, which also included a personal umbrella liability endorsement that gave expanded coverage. Plaintiff St. Paul provided a defense to the Lippincotts on the state proceedings pursuant to the terms of the insurance policy, but with a reservation of any defense under the policy. The court in Greene County entered judgment in favor of the Thompsons, finding the Lippincotts were guilty of negligent misrepresentation. The court awarded $47,900 for the cost to repair the structural defects and $27,100 in diminution in the fair market value of the home.

DISCUSSION
Plaintiff argues in its motion for summary judgment that defendants are not entitled to coverage under the St. Paul insurance policy for their liability to the Thompsons. Plaintiff claims that defendants' misrepresentations to the Thompsons did not result in any property damage, but rather that any property damage was caused by the preexisting structural defects in the property. Plaintiff also argues that rather than suffering property damage as that term is used in the policy, the Thompsons suffered a purely economic loss in that they had to pay more than fair market value for the defendants' property.
Defendants argue in their motion for summary judgment that the Greene County court judgment on the Thompsons' negligent misrepresentation claim constitutes an occurrence under the St. Paul insurance policy, and an "act or incident" under the personal umbrella liability endorsement. Defendants also claim that the damages recovered in the underlying lawsuit constitute "property damage" as defined under the umbrella policy.[1]
This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must initially demonstrate the absence of an issue for trial. Celotex Corporation, 477 U.S. at 323, 106 S.Ct. 2548. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e).
Plaintiff has the better of the argument. The main insurance policy that plaintiff issued to defendants, which is identified as PAK II, contains the following language:
Legal Liability Protection. Under the legal liability section of this policy you're covered when someone makes a claim against you. We'll cover your legal liability resulting from an occurrence in which there is actual accidental property damage, personal injury or death, anywhere in the world, subject to the limitations and exclusions contained in PAK II. By occurrence, we mean an event, including continuous or repeated exposure *1048 to the same conditions, resulting in personal injury or property damage neither expected nor intended by anyone insured by PAK II.
* * * * * *
"Property damage" is damage to someone else's property or its loss or destruction and also the loss of its use.
The Personal Umbrella Liability Endorsement, which expands the scope of defendants' coverage, states:
What do we mean by accident or incident? Anything that causes property damage, personal injury or death without your expecting or intending it.
* * * * * *
If the accident or incident is covered under this endorsement and is not covered by your PAK II or other primary policies we'll pay claims you may legally have to pay because of someone's property damage, personal injury or death. What do we mean by property damage? Any damage to tangible property or its loss or destruction. Also the loss of its use ...
The interpretation of an insurance policy is a question of law for the trial court, and policy terms are given their ordinary meaning. Wood v. Safeco Ins. Co., 980 S.W.2d 43, 48 (Mo.App.1998). Furthermore, under Missouri law, when a liability policy defines "occurrence" as meaning an "accident," this is construed to include injury caused by the negligence of the insured. Id. at 49. In other words, negligent conduct can be encompassed by a liability policy providing coverage for an "occurrence" defined as an "accident." Id. at 50. This includes claims of negligent misrepresentation. Id. at 52.
Based on the Wood case, a review of the policy provisions at issue in this case and quoted above shows that the "occurrence" at issue would encompass the negligent misrepresentation for which defendants were found to be liable. However, unless there was property damage as a result of that "occurrence" as defined by the policy, plaintiff is entitled to judgment as a matter of law.
Property damage is defined in the main policy as damage to someone else's property or its loss or destruction and also the loss of its use. Under the umbrella policy, property damage is defined as any damage to tangible property or its loss or destruction or the loss of its use. The limitation in the main policy to cover damages to "someone else's property" precludes a finding that plaintiff is liable under that policy to defendants' for damage to property they owned at the time of their negligent misrepresentations.
Defendants, while implicitly conceding that the main policy's definition of property damage does not cover this claim, focus on the language in the umbrella policy that states its coverage encompasses definitions of property damage that is broader than other policies. Defendants also rely on the words "any" and "tangible" in the umbrella policy, and argue that the umbrella policy must be read with the intent to afford broader coverage for unusual claims not covered by the underlying policy. Defendants claim that the addition of the word "any" and the removal of the term "someone else's" creates an ambiguity which must be construed against plaintiff. Lastly, defendants assert that the diminution in the property and the cost of repair due to their negligence comes within the provision "any damage to tangible property or its loss," and that it can also be construed as a loss of its use under the policy.
Although the umbrella coverage certainly extends what claims plaintiff will cover, that extension is not without limit. Defendants' negligent misrepresentations did not cause any damage to tangible property *1049 or its loss or destruction or the loss of its use. By relying on those misrepresentations, the buyers suffered economic damage. Such a pecuniary loss does not involve any damage to tangible property. The Court declines to read the clear language in the contract to encompass defendants' novel claim.
Additionally, the Court does not find any ambiguity in the umbrella policy that requires the Court to construe the policy. The words "any" and "tangible" are not ambiguous terms. Moreover, the fact that the clear terms of the policy do not cover a speculative claim, such as the one that defendants are attempting to raise, does not somehow convert the policy into an ambiguous policy requiring this Court to construe it.
IT IS HEREBY ORDERED that plaintiff's motion for summary judgment (Dkt. # 17) is GRANTED.
IT IS HEREBY FURTHER ORDERED that defendants' motion for summary judgment (Dkt. # 20) is DENIED.
An appropriate judgment accompanies this order.
NOTES
[1] Defendants also make an unpersuasive argument that plaintiff never amended its present complaint to address the amended complaint filed in the underlying lawsuit. No caselaw is cited to support this brief argument. Furthermore, the relief sought in the last paragraph of plaintiff's complaint is broad enough to encompass the entire underlying lawsuit. This "argument" provides no basis for relief for defendants.